In re PINE SPRINGS FARM
& CASINO, INC., Debtor.

Paul BANNER, as Trustee of Pine
Springs Farm & Casino, Inc.,
Plaintiff,

v.

S.S. PIERCE COMPANY, Defendant.

Bankruptcy No. 91–11911.
Adv. No. 91–8002.

United States Bankruptcy Court,
N.D. New York.

March 31, 1992.

Ober, Kaler, Grimes & Shriver by Aaron R. Cahn, New York City, for debtor.

Robert O. Wilhelm, Clifton Park, N.Y., for defendant.

Paul Banner, Poughkeepsie, N.Y., Chapter 7 Trustee, plaintiff.

DECISION ON PREFERENCE–RECOVERY PERIOD FOR "OUTSIDE" CREDITOR–TRANSFEREE WHEN TRANSFER BENEFITS "INSIDE" CREDITOR

[11 U.S.C. § 547(b) and § 550(a)(1)]

JEREMIAH E. BERK, Bankruptcy Judge.

This is an adversary proceeding commenced by the former Chapter 11 Debtor ("Debtor"), now subsumed by the Chapter 7 Trustee ("Plaintiff"), seeking a determination that a prepetition execution and levy by creditor S.S. Pierce Company ("Defendant") constitutes an avoidable preference under Section 547(b) of the Bankruptcy Code ("Code"), 11 U.S.C. § 547(b).[1] By motion filed July 29, 1991, Defendant seeks an order dismissing the complaint for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Bankr.P. 7012. As Defendant's motion was filed after issue was joined and the pleadings closed, it will be deemed a motion for judgment on the pleadings. By motion filed August 27, 1991, Plaintiff seeks summary judgment under Fed.R.Bankr.P. 7056.

## I. FINDINGS OF FACT

The following facts are not disputed. The Debtor filed a petition for relief under Chapter 11 on April 1, 1991. Prior thereto, the Debtor entered into an agreement with the Defendant whereby Defendant would supply merchandise to the Debtor. The Debtor's director and shareholder, George Garzilli ("Garzilli"), guaranteed payment under the agreement.

At some point prior to April 17, 1990, the Defendant supplied merchandise to the Debtor in the amount of $8,113.18. Thereafter, the Defendant commenced an action against the Debtor and Garzilli to collect the debt. On April 17, 1990, a default judgment was entered against the Debtor. The Greene County Sheriff executed on the judgment on August 10, 1990 by levy against the Debtor's bank account. The

---

1. On October 21, 1991, after this matter was taken under advisement, the Chapter 11 case was converted to one under Chapter 7 and a trustee appointed. The Chapter 7 trustee subsequently advised that he wished to continue the adversary proceeding.

levy resulted in the gross amount of $6,611.49 being transferred to the Defendant in partial satisfaction of its judgment.

Plaintiff contends that Defendant's execution and levy on the Debtor's bank account within *one year* of the bankruptcy filing constitutes an avoidable preferential transfer under Code § 547(b), when considered in conjunction with Code § 550(a)(1) regarding transfers for the benefit of insiders. Accordingly, Plaintiff moves for summary judgment on the ground that there is no triable issue of fact and that as a matter of law no defense exists to the preference-recovery claim set out in the complaint.

Defendant points out that the Second Circuit Court of Appeals has not judicially interpreted the relationship between Code §§ 547(b) and 550(a) regarding this issue. In support of its motion, Defendant cites various cases holding that Code § 550(a) does not apply to non-insider creditors. Defendant concedes the existence of all other elements of a preferential transfer under Code § 547(b), and asserts no defenses under Code § 547(c). Accordingly, determination of the so-called *"Deprizio"* issue presented by these motions is dispositive of the preference claim.

## II. DISCUSSION

By virtue of his guaranty of payment of Debtor's obligation to Defendant, Garzilli became a "creditor" of the Debtor holding an unliquidated, unmatured, contingent right to payment (i.e., "claim" for reimbursement) should Defendant collect from him. Code § 101(10)(A) and § 101(5)(A). Transfers of property interests of a debtor made to a non-insider creditor within 90 days of bankruptcy may be avoided as preferential. Code § 547(b)(4)(A). If, at the time of the transfer, the creditor was an "insider" of the debtor, the recovery (i.e., reach-back) period extends to one year. Code § 547(b)(4)(B). "Insider" includes a director, officer, or person in control of a debtor corporation. Code § 101(31)(B). The parties agree that Garzilli was an "insider". Rather, the dispute focuses on the applicability of Section 550(a)(1), which provides in pertinent part:

to the extent that a transfer is avoided under section ... 547 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made....

The transfer in question, i.e., the levy by Defendant on the Debtor's bank account, occurred more than 90 days, but less than one year before bankruptcy. The "initial transferee of such transfer" was a non-insider creditor, the Defendant. The transfer benefited the insider-guarantor-creditor, Garzilli, by reducing his personal exposure on the debt. The sole issue presented here is whether the extended recovery period of Section 547(b)(4)(B) subjects to preference avoidance an otherwise time-protected transfer to a non-insider because the obligation was guaranteed by an insider of the Debtor.

The first circuit court to address this issue decided in the affirmative. In *Levit v. Ingersoll Rand Financial Corp.*, 874 F.2d 1186 (7th Cir.1989) (the landmark decision known as *"Deprizio"*), the court held that the preference-recovery period for transfers made to a non-insider creditor extended to one year where the transfers benefitted an insider of the debtor, such as a guarantor.

The *Deprizio* court was fully aware of the well-developed divergence of opinion on the issue. *Id.* at 1189. The Seventh Circuit rejected the notion that such application of Code § 550(a)(1) was inequitable in that it unfairly penalized prudent lenders and creditors who obtained insider guarantees. It observed:

So it is worth pointing out that even if equity arguments were admissible, they would not help the creditors' cause. Rules of law affecting parties to voluntary arrangements do not operate "inequitably" in the business world—at least not once the rule is understood. Prices adjust. If the extended preference period facilitates the operation of bankruptcy as a collective debt-adjustment process,

then credit will become available on slightly better terms. If a longer period has the opposite effect, creditors will charge slightly higher rates of interest and monitor debtors more closely.... A rule may injure debtors and creditors by foreclosing efficient business arrangements and increasing the rate of interest low-risk borrowers must pay, but inefficiency is not inequity.

*Id.* at 1198 (citations omitted).

Likewise, *Deprizio* also rejected the "two-transfer" analysis of Code §§ 547(b) and 550(a). *Id.* at 1195–96. The "two transfer" approach views the initial payment to the non-insider as an event separate and apart from the consequent benefit ("transfer") to the insider. The Seventh Circuit noted:

The two-transfer approach equates "transfer" with "benefit received". Both Lender and Guarantor gain from payment, and each receives a "transfer" to the extent of the gain. The Code, however, equates "transfer" with payments made.... Sections 547 and 550 both speak of a transfer being avoided; avoidability is an attribute of the transfer rather than of the creditor. While the lenders want to define transfer from the recipients' perspectives, the Code consistently defines it from the debtor's. A single payment therefore is one "transfer", no matter how many persons gain thereby.

*Id.*

Instead of resolving the issue, *Deprizio* focused greater attention on it. Divergent views exist among those district and bankruptcy courts which have considered the issue. Those refusing to apply a recovery period beyond 90 days for non-insider transferees include *In re Rubin Bros. Footwear, Inc.,* 119 B.R. 416 (S.D.N.Y. 1990); *Matter of Midwestern Cos., Inc.,* 102 B.R. 169 (W.D.Mo.1989); *In re Performance Communications, Inc.,* 126 B.R. 473 (Bankr.W.D.Pa.1991); *In re Arundel Hous. Components, Inc.,* 126 B.R. 216 (Bankr.D.Md.1991); *In re Aerco Metals, Inc.,* 60 B.R. 77 (Bankr.N.D.Tex.1985); *In re Mercon Indus., Inc.,* 37 B.R. 549 (Bankr.

E.D.Pa.1984); *In re Cove Patio Corp.,* 19 B.R. 843 (Bankr.S.D.Fla.1982); *In re Duccilli Formal Wear, Inc.,* 8 Bankr.Ct.Dec. (CRR) 1180 (Bankr.S.D.Ohio 1982); *In re Church Bldgs. & Interiors, Inc.,* 14 B.R. 128 (Bankr.W.D.Okla.1981). Those decisions extending the recovery period to one year for non-insider transferees include *In re Ishaq,* 129 B.R. 206 (Bankr.D.Or.1991); *In re Helen Gallagher Enters., Inc.,* 126 B.R. 997 (Bankr.C.D.Ill.1991); *Matter of Installation Servs., Inc.,* 101 B.R. 282 (Bankr.N.D.Ala.1989); *In re Coastal Petroleum Corp.,* 91 B.R. 35 (Bankr. N.D.Ohio 1988); *In re Big Three Transp., Inc.,* 41 B.R. 16 (Bankr.W.D.Ark.1983); *see also Cambridge Meridian Group, Inc. v. Connecticut Nat'l Bank (In re Erin Food Servs., Inc.),* 117 B.R. 21 (Bankr.D.Mass. 1990), *aff'd,* 140 B.R. 14 (D.Mass.1991), *appeal docketed,* Nos. 91–2175, 91–2176 (1st Cir. Nov. 19, 1991). However, each circuit court which has considered the issue, or a variant of it, has adopted *Deprizio's* reasoning. *In re C–L Cartage Co.,* 899 F.2d 1490 (6th Cir.1990); *In re Robinson Bros. Drilling, Inc.,* 892 F.2d 850 (10th Cir.1989); *see In re H & S Transp. Co.,* 939 F.2d 355 (6th Cir.1991) (applies *Deprizio* to Code § 547(c)(4)); *cf. Matter of T.B. Westex Foods, Inc.,* 950 F.2d 1187 (5th Cir.1992).

*Deprizio* has been criticized by the courts, *see, e.g., In re Performance Communications, Inc.,* 126 B.R. at 474 *(Deprizio's* analysis "is fatally flawed"); *In re Rubin Bros. Footwear, Inc.,* 119 B.R. at 425 (*Deprizio* "is a much criticized case"); and by commentators, *see, e.g.,* Robert F. Higgins & David E. Peterson, *Is There a One–Year Preference Period for Non–Insiders?,* 64 Am.Bankr.L.J. 383, 398 (1990) (Although *Deprizio* "gave lip service to the fairness of the result, it seems difficult to justify the outcome from a standpoint of fairness."); A. Bruce Schimberg, *Some Observations About Deprizio,* 63rd Annual Meeting of the Nat'l Conf. of Bankr. Judges 2–23 (1989). Its ramifications have "generated nationwide concern within the lending community," Walter A. Effross, *Deprizio's Honor: Lenders, Insider Guarantors and the Prisoners' Dilemma,* 21

Seton Hall L.Rev. 774, 775 (1991); and served as ready fodder for law review analysis, *see, e.g., id.;* Robert F. Higgins & David E. Peterson, *Is There a One–Year Preference Period for Non–Insiders?,* 64 Am.Bankr.L.J. 383 (1990); David I. Katzen, *Deprizio and Bankruptcy Code Section 550: Extended Preference Exposure Via Insider Guaranties, And Other Perils of Initial Transferee Liability,* 45 Bus.Law. 511 (1990); Tom Lane, *Recovery of Avoidable Transfers from the "Initial Transferee" Under Section 550(a) of the Bankruptcy Reform Act of 1978,* 96 Comm.L.J. 457 (1991); Jay L. Westbrook, *Two Thoughts About Insider Preferences,* 76 Minn.L.Rev. 73 (1991); Scott C. Barney, Comment, *Bankruptcy Preferences and Insider Guaranties,* 5 La.L.Rev. 1047 (1991); Henk J. Brands, Note, *The Interplay Between Sections 547(b) and 550 of the Bankruptcy Code,* 89 Colum.L.Rev. 530 (1989); John S. Cullina, Note, *Recharacterizing Insider Preferences as Fraudulent Conveyances: A Different View of Levit v. Ingersoll Rand,* 77 Va.L.Rev. 149 (1991); Andrew J. Nussbaum, Comment, *Insider Preferences and the Problem of Self–Dealing Under the Bankruptcy Code,* 57 U.Chi.L.Rev. 603 (1990); Mark E. Toth, Comment, *The Impossible State of Preference Law Under the Bankruptcy Code: Levit v. Ingersoll Rand Financial Corp. and the Problem of Insider–Guaranteed Debt,* 1990 Wis.L.Rev. 1155 (1990).

For the following reasons, we adopt *Deprizio* and find its analysis persuasive.

### A. Purpose of Code § 547(b)

"One of the primary goals of bankruptcy law," one writer observed, "is 'the equitable distribution of a troubled company's assets through the equal sharing of losses of creditors of equal rank.'" Walter A. Effross, *supra* at 774 (quoting Martin J. Bienenstock, *Bankruptcy Reorganization* 1 (1987)). To this end, the Code's drafters sought to deter debtors from:

exercising favoritism towards any creditor. An insolvent debtor cannot circumvent the Code by preferentially transferring an interest in property to, or for the benefit of, one creditor over others so as to grant that creditor more than it would have otherwise received in the debtor's liquidation or reorganization under the Code.

*Id.*

Code § 547(b) implements the goal of ensuring "that all creditors similarly situated receive equal treatment, by allowing the trustee to recover certain payments or transfers of property which prefer some creditors over others." *In re C–L Cartage Co.,* 899 F.2d at 1492. The policy concerns underlying the purpose of Code § 547(b), set forth in the House Report accompanying this provision, were recently recited by the Supreme Court:

"A preference is a transfer that enables a creditor to receive payment of a greater percentage of his claim against the debtor than he would have received if the transfer had not been made and he had participated in the distribution of the assets of the bankrupt estate. The purpose of the preference section is twofold. First, by permitting the trustee to avoid prebankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during his slide into bankruptcy. The protection thus afforded the debtor often enables him to work his way out of a difficult situation through cooperation with all of his creditors. Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally. The operation of the preference section deters 'the race of diligence' of creditors to dismember the debtor before bankruptcy furthers the second goal of the preference section—that of equality of distribution."

*Union Bank v. Wolas,* —— U.S. ——, ——, 112 S.Ct. 527, 533, 116 L.Ed.2d 514, 524 (1991) (quoting H.Rep.No. 595, 95th Cong., 1st Sess. 177–78 (1977)).

In addition, the Court observed that Code § 547(b) "broadly" authorizes bankruptcy

trustees to avoid these preferential transfers. *Id.* at ——, 112 S.Ct. at 529–30, 116 L.Ed.2d at 520. Thus, the objective of Code § 547(b) is to assure the equality of treatment in bankruptcy among similarly situated creditors, and this provision must be broadly applied.

Code § 550(a) compliments Code § 547(b)'s objectives in promoting equality of distribution among creditors. As the *Deprizio* court explained:

> Insiders pose special problems. Insiders will be the first to recognize that the firm is in a downward spiral. If insiders and outsiders had the same preference-recovery period, insiders who lent money to the firm could use their knowledge to advantage by paying their own loans preferentially, then putting off filing the petition in bankruptcy until the preference period had passed. Outside creditors, aware of this risk, would monitor more closely, or grab assets themselves (fearing that the reciprocity that is important to the pooling scheme has been destroyed), or precipitate bankruptcy at the smallest sign of trouble, hoping to "catch" inside preferences before it is too late. All of these devices could be costly. An alternative device is to make the preference-recovery period for insiders longer than that for outsiders. With a long period for insiders, even the prescient managers who first see the end coming are unlikely to be able to prefer themselves in distribution.

*Deprizio*, 874 F.2d at 1195; Katzen, *supra* at 514 ("Preference analysis becomes a bit complicated when an insider guarantees the debtor's obligation to an otherwise arm's-length or 'outside' creditor.").

Where an insider has personally guaranteed the loan, there is an obvious motivation for the insider to cause the debtor to prefer such obligations while neglecting others. "Insiders, using their knowledge and control over the debtor, have an incentive to cause the debtor to prefer particular outside creditors when the insiders themselves derive benefits from those payments." *In C–L Cartage Co.*, 899 F.2d at 1495; Thomas E. Pitts, Jr., *Insider Guaranties and the Law of Preferences*, 55 Am.Bankr.L.J. 343, 353 (1981) ("Where preferences are concerned, the critical element of that relationship is the insider's presumed control over the purse strings of the debtor."). In our case, for instance, Garzilli may have knowingly allowed the Debtor to default in the state collection action so as to limit his own exposure on the debt. Code § 550(a)(1) effectuates the equality of distribution policy of Code § 547(b) by permitting recovery either from the entity ultimately benefitting from the transfer, the insider guarantor Garzilli, *or* from the initial transferee, the non-insider creditor Defendant.

## B. Literal Application

The relationship between Code §§ 547(b) and 550(a) is symbiotic. Whereas the former "specifies *which* transfers the trustee may avoid," the latter identifies from *whom* recovery may be had. *In re C–L Cartage Co.*, 899 F.2d at 1493 (emphasis added); *In re Performance Communications, Inc.*, 126 B.R. at 475; *In re H & S Transp. Co.*, 110 B.R. 827, 832 (M.D.Tenn. 1989), *aff'd*, 939 F.2d 355 (6th Cir.1991); Lane, *supra* at 481; Pitts, *supra* at 346–47. Code § 547(b) renders avoidable certain transfers "to or for the benefit of a creditor" if they were made within 90 days preceding the petition filing date, or within one year if the creditor was an insider at the time of the transfer. Code § 550(a)(1), in turn, permits recovery not only from the creditor benefiting by the transfer, but from the initial transferee as well.

A time-honored rule of statutory construction is that "the meaning of the statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, ... the sole function of the courts is to enforce it according to its terms." *Caminetti v. U.S.*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). This means that "[i]f the language is plain, unambiguous and uncontrolled by other parts of the act or other acts upon the same subject the court cannot give it a different meaning." 2A Norman J. Singer, Sutherland Statutory Construction § 46.01 (1992). And, as the Supreme Court recent-

ly noted, "The fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning." *Union Bank v. Wolas,* ——— U.S. at ———, 112 S.Ct. at 531, 116 L.Ed.2d at 522.

Those courts viewing Code § 550(a) as being "unambiguous" and "susceptible of no other interpretation," have accordingly applied its literal terms. *In re Big Three Transp., Inc.,* 41 B.R. at 20–21; *see, e.g., In re Robinson Bros. Drilling, Inc.,* 97 B.R. 77, 82 (W.D.Okla.1988) (advocates "literal interpretation"), *aff'd,* 892 F.2d 850 (10th Cir.1989); *In re David Jones Builder, Inc.,* 129 B.R. 682, 693 (Bankr.S.D.Fla. 1991) (Code § 550(a) is a "seemingly clearly written statute"); *In re Coastal Petroleum Corp.,* 91 B.R. at 37 (the "language of § 550 is clear"); *see* Pitts, *supra* at 360–61. *But see In re Performance Communications, Inc.,* 126 B.R. at 476 ("mere incantation of the plain meaning rule is not an acceptable substitute for meaningful analysis of a statute"). And, as one court noted, "The drafters of the Code could very easily have omitted the 'initial transfer' language," *In re Big Three Transp., Inc.,* 41 B.R. at 21, which of course has not been done. The advantages of a literal application of Code § 550(a) are explained in the following:

> The literal reading of § 550(a) is adopted here because it is believed to express Congressional policy favoring equity in distribution, a desirable goal in the management of debtors' estates. Certainly, a literal reading provides a sharper tool to undo a corporation's preferential payments made to favored creditors on the decision of corporate officers who wish to extinguish or diminish their personal liabilities on guaranties. Where the literal meaning of § 550(a) is thus supported by reason, there is no occasion to vary by interpretation or equity the unambiguous language Congress has used to state and promote its policy in cases such as this.

*Matter of Installation Services, Inc.,* 101 B.R. at 284–85; Vern Countryman, *The Trustee's Recovery in Preference Actions,* 3 Bankr.Dev.J. 449, 464 (1986) ("It is possible to read Section 550(a) to say that if a transfer to a noninsider creditor six months before bankruptcy also benefits an insider-guarantor-creditor, the trustee may recover from either.").

Although some courts have refused to give effect to Code § 550(a)'s literal dictates based on perceived harshness or inequity (as discussed below), literal application of Code § 550(a) is mandated. "We have serious doubts ... about the propriety of judges' declining to enforce statutes that produce inequitable results." *Bonded Fin. Servs., Inc. v. European Am. Bank (In re Bonded Fin. Servs., Inc.),* 838 F.2d 890, 894 (7th Cir.1988); *In re C–L Cartage Co.,* 899 F.2d at 1494 ("Bankruptcy courts, however, cannot use equitable principles to disregard unambiguous statutory language."); Lane, *supra* at 480 ("court's equitable powers ... cannot legitimately be used to evade a clear command of the Code"). Similarly, the Supreme Court notes: "There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted." *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 625, 98 S.Ct. 2010, 2015, 56 L.Ed.2d 581 (1978). Courts of law may not legislate, as that function is reserved for others.[2]

### C. Equity

One reason courts refuse to apply the literal dictates of Code §§ 547(b) and 550(a) is the perceived prevention of inequitable results. *Deprizio,* 874 F.2d at 1198 (" 'equity' arguments have captivated a majority of the bankruptcy judges and several of the commentators who have spoken on this subject"); *see, e.g., In re Performance Communications, Inc.,* 126 B.R. at 477 ("Literal interpretation of sections 547(b) and 550(a)(1) ... would be inequitable."); *In re Aerco Metals, Inc.,* 60 B.R. at 82; *In re V.N. Deprizio Constr. Co.,* 58 B.R. 478,

---

**2.** We note a pending legislative effort to amend the Bankruptcy Code to create an additional defense designed to protect a transferee holding an insider guarantee from the extended preference-recovery period. S.1985, 102d Cong., 1st Sess. (1991).

481 (Bankr.N.D.Ill.1986), *rev'd*, 86 B.R. 545 (N.D.Ill.1988), *aff'd in part and rev'd in part*, 874 F.2d 1186 (7th Cir.1989); *Matter of R.A. Beck Builder, Inc.*, 34 B.R. 888, 894 (Bankr.W.D.Pa.1983) ("inequitable result"); *In re Duccilli Formal Wear, Inc.*, 8 Bankr.Ct.Dec. at 1183 ("it would be inequitable to require the Bank to surrender up repayment of its loan where payments to it were not made within ninety days of filing"); *In re Church Bldgs. & Interiors, Inc.*, 14 B.R. at 13; *see In re Arundel Hous. Components, Inc.*, 126 B.R. at 219 (*Deprizio* "represents an incorrect interpretation of the law whose application would subvert justice, produce much needless mischief and create an unfortunate result in the instant case"). One court, rejecting *Deprizio* "as a policy matter," explained that it would "likely impede the availability of credit to ailing businesses." *In re Rubin Bros. Footwear, Inc.*, 119 B.R. at 425. Many of these courts rely on the following passage from *Collier:*

> In some circumstances, a literal application of section 550(a) would permit the trustee to recover from a party who is innocent of wrongdoing and deserves protection. In such circumstances the bankruptcy court should use its equitable powers to prevent an inequitable result. For example, if property is transferred to a good faith surety or endorser as consideration incidental to the guarantee of an antecedent debt of a creditor, and the surety subsequently pays the creditor, the property or its value should be recovered from the creditor for whose benefit the transfer was made rather than from the surety or endorser to whom the transfer was made. Likewise, if a transfer is made to a creditor who is not an insider more than 90 days but within one year before bankruptcy and the effect is to prefer an insider-guarantor, recovery should be restricted to the guarantor and the creditor should be protected. Otherwise, a creditor who does not demand a guarantor can be better off than one who does.

4 Lawrence P. King, *Collier on Bankruptcy* ¶ 550.02 (15th ed. 1991).

Equity, however, is a matter of perspective, and where one stands on a given issue often depends on where one sits. From the viewpoint of the non-insider creditor holding an insider's guarantee, it seems inequitable to impose a preference-recovery period longer than 90 days. However, since the purpose of Section 547(b) is to promote equality of distribution, it is proper to view the issue from the perspective of *all* non-insider creditors. Section 550(a)(1) assures this equitable result by exposing those non-insider creditors holding insider guarantees to the extended one-year preference-recovery period. As one of the "basic goals of bankruptcy law is to provide for equitable distribution of the debtor's assets to creditors," and since the Bankruptcy Code "requires heightened responsibilities for insiders and their debtors," Walter R. Phillips, *Insider Provisions of the New Bankruptcy Code*, 55 Am.Bankr.L.J. 363, 363, 371 (1981), Code §§ 547(b) and 550(a) should be interpreted to allow a one-year recovery period from the non-insider creditor holding an insider guarantee. As one writer observed:

> With the benefit of time's removed, we begin to see that the decisions expanding insider-preference recoveries will not lead to the demise of commercial lending in the United States, despite the river of criticism that has sprung from them. I suspect that they will join a long line of bankruptcy cases that provoked cries of doom only to become part of the commercial landscape.

Jay L. Westbrook, *Two Thoughts About Insider Preferences*, 76 Minn.L.Rev. at 73–74.

### D. One Transfer, Or Two?

Some courts analyze a payment made on a debt guaranteed by an insider of the debtor as effecting two distinct transfers. *See, e.g., In re Mercon Indus., Inc.*, 37 B.R. 549 (Bankr.E.D.Pa.1984). This approach views the initial transfer to the non-insider creditor as constituting one transfer; the other consists of the "transfer to the guarantors in satisfaction of their contingent liability." *Id.* at 552. Because the first transfer occurs outside of the 90–day

preference-recovery period applicable to non-insider creditors, it is effectively shielded from avoidance.

We reject the "two transfer" approach as it "incorrectly equates 'transfer' with 'benefit received'." *In re C–L Cartage Co.*, 899 F.2d at 1495; *see, e.g., In re Robinson Bros. Drilling, Inc.*, 892 F.2d 850 (10th Cir.1989) (adopting district court decision); *In re Helen Gallagher Enters., Inc.*, 126 B.R. at 1001; *cf. In re H & S Transp. Co.*, 110 B.R. at 832 (rejects "two transfer" approach as applied to Code § 547(c)(4)), *aff'd*, 939 F.2d 355 (6th Cir.1991); Lane, *supra* at 476. A "transfer", as the *Deprizio* court observed, contemplates a "disposition of property". *Deprizio*, 874 F.2d at 1195. Code §§ 547(b) and 550(a) work to avoid transfers from the perspective of the debtor. As such, "[a] single payment therefore is one 'transfer', no matter how many persons gain thereby." *Id.* at 1196.

Having determined that Plaintiff has as a matter of law established his entitlement to relief, we grant his motion for summary judgment pursuant to Fed.R.Bankr.P. 7056. The Defendant's August 10, 1990 pre-petition levy on the Debtor's bank account in the gross amount of $6,611.49 is avoided as a preferential transfer under Code §§ 547(b) and 550(a). Accordingly, Defendant's motion for judgment on the pleadings pursuant to Fed.R.Bankr.P. 7012 is denied.

### CONCLUSIONS OF LAW

1. The Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding as provided by 28 U.S.C. § 157(b)(2)(F).

2. As a matter of law, Plaintiff is entitled to recover the subject transfer as a preference pursuant to 11 U.S.C. §§ 547(b) and 550(a)(1). Accordingly, Plaintiff's motion for summary judgment is granted.

3. Defendant's motion for judgment on the pleadings is denied.