**In re JAMESON TRAVEL, INC., Debtor.**

**Harold B. MURPHY, Chapter 7 Trustee, Plaintiff,**

v.

**WAINWRIGHT BANK & TRUST COMPANY, Defendant.**

Bankruptcy No. 90–16022–JNG. Adv. No. 92–1394.

United States Bankruptcy Court, D. Massachusetts.

Dec. 3, 1992.

Charles A. Dale, III, Boston, MA, for Chapter 7 Trustee.

Edward H. Seksay, Boston, MA, for Wainwright Bank & Trust Co.

## MEMORANDUM

JAMES A. GOODMAN, Bankruptcy Judge.

### I. INTRODUCTION

On June 16, 1992, Harold B. Murphy, the Chapter 7 Trustee (the "Trustee") of Jameson Travel, Inc. ("Jameson" or the "Debtor") filed an adversary complaint against Wainwright Bank & Trust Company (the "Bank"). The Trustee, through his complaint, seeks to recover $90,027.53 plus interest from the Bank pursuant to sections 547(b)[1] and 550[2] of the Bankruptcy Code. On July 24, 1992, the Bank moved to dismiss the complaint for failure to state a claim. *See* Fed.R.Civ.P. 12(b)(6); Fed.R. of Bankr.P. 7012. For purposes of its motion, the Bank did not contest the allegations in the Trustee's complaint. Rather, it argued that based upon those allegations the

---

1. Section 547(b) provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

2. Section 550 provides in relevant part:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).

Trustee could prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

The Court conducted a hearing on September 9, 1992. At that time, the Court indicated that it would treat the Bank's motion to dismiss as a motion for summary judgment. The Court ordered the parties to file an agreed statement of facts and briefs. The parties did so. Moreover, the Trustee filed a cross-motion for summary judgment. However, since the parties have stipulated to certain facts for purposes of the Bank's motion to dismiss only, the matter is not ripe for summary judgment. *See* Federal Rule of Bankruptcy Procedure 7056.

## II. FACTS

On August 28, 1989, the Bank made a $100,000 *unsecured* loan to the Debtor. The loan was evidenced by a promissory note signed on behalf of Jameson by its president, Robert H. Wyatt, Jr. ("Wyatt"). The terms called for the Debtor to repay the loan in five consecutive monthly installments of $20,000 plus accrued interest, commencing on October 1, 1989. The loan was guaranteed by Wyatt and two of the Debtor's shareholders, Russell B. Clark and Forrester A. Clark. Wyatt was an insider of the Debtor as that term is defined in 11 U.S.C. § 101(31)[3], as well as a creditor of Jameson as that term is defined in 11 U.S.C. § 101(10)[4].

Within one year of and more than ninety days before the filing of the Debtor's bankruptcy petition on October 17, 1992, the Debtor made payments to the Bank totalling $65,041.64.[5] The Trustee has neither initiated an action against the guarantors/insiders of the Debtor nor alleged that the Bank is an insider of the Debtor.

For purposes of the Bank's motion to dismiss, the parties have stipulated that Jameson was "insolvent," at the time the payments were made and that the payments enabled Wyatt to receive more than he would have if the case were a case under Chapter 7. In short, for purposes of the Bank's motion to dismiss, the parties have agreed to all the elements necessary to establish a preference. *See* 11 U.S.C. § 547(b).

## III. DISCUSSION

The Trustee's case against the Bank is predicated upon this Court's adoption of the holding in the seminal case of *Levit v. Ingersoll Rand Fin. Corp. (In re V.N. Deprizio Constr. Co.)*, 874 F.2d 1186 (7th Cir.1989) (hereinafter *Deprizio*). In that case, the United States Court of Appeals for the Seventh Circuit held that an avoidable preferential transfer which occurred outside ninety days but within one year of the bankruptcy filing was recoverable from a non-insider transferee when the antecedent debt was guaranteed by an insider who benefitted from the transfer. The court held that the insider, as a guarantor, held a contingent claim against the debtor and was therefore a creditor for purposes of 11 U.S.C. § 547(b). The court also held that the one year "reach-back" provision of section 547(b)(4)(B) applied since the creditor was an insider. Once the trustee established the preference, the court held the trustee could recover the property transferred from the initial transferee pursuant to 11 U.S.C. § 550(a)(1), even though the initial transferee was not the insider that caused the one year "reach-back" provision

---

**3.** Insider is defined in relevant part as follows:
   (B) if the debtor is a corporation—
      (i) director of the debtor;
      (ii) officer of the debtor;
      (iii) person in control of the debtor;
      (iv) partnership in which the debtor is a general partner;
      (v) general partner of the debtor; or
      (vi) relative of a general partner, director, officer, or person in control of the debtor;
   11 U.S.C. § 101(31)

**4.** Section 101(10) provides in relevant part:

   (10) "creditor" means—
      (A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor....
   11 U.S.C. § 101(10).

**5.** The parties dispute the source of the additional $24,985.89 in payments made to Wainwright on account of the note within one year and more than ninety days prior to Jameson's bankruptcy.

to apply. The *Deprizio* case has engendered considerable controversy and generated concern among lenders. *See generally In re Pine Springs Farm & Casino, Inc.,* 139 B.R. 90 (Bankr.N.D.N.Y.1992) and articles cited therein. The Bank urges this Court to join the chorus rejecting *Deprizio.*

Section 547 of the Bankruptcy Code identifies transfers that can be avoided by the trustee, while section 550 identifies those from whom the transfers that have been avoided can be recovered. 11 U.S.C. §§ 547(b), 550(a)(1). *See also In re Marilyn Steinberg Enter. Inc.,* 141 B.R. 587, 591 (Bankr.E.D.Pa.1992); *In re Pine Spring Farms & Casino, Inc., supra.* The parties are in agreement that the Court must decide two issues: 1) whether the one year "reach-back" period set forth in 11 U.S.C. § 547(b)(4)(B) applies to payments received by a non-insider with respect to a loan guaranteed by an insider of the Debtor; and 2) if so, whether 11 U.S.C. § 550(a)(1) permits the Trustee to recover a preference from the initial transferee, in this case Wainright, the recipient of payments outside the 90 day time frame set forth in 11 U.S.C. § 547(b)(4)(A).

The Bank says the majority of courts reject attempts by trustees to use the one-year "reach-back" period set forth in section 547(b)(4)(B) to recover against non-insiders. It cites, among others, the following cases: *In re Performance Communications, Inc.,* 126 B.R. 473, 477 (Bankr. W.D.Pa.1991); *In re Arundel Housing Components, Inc.,* 126 B.R. 216, 219 (Bankr.D.Md.1991); *In re Midwestern Companies, Inc.,* 102 B.R. 169, 171–72 (W.D.Mo.1989); *In re Aerco Metals, Inc.,* 60 B.R. 77, 82 (Bankr.N.D.Tex.1985); *In re Mercon Indus., Inc.,* 37 B.R. 549, 552 (Bankr.E.D.Pa.1984); *In re R.A. Beck Builder, Inc.,* 34 B.R. 888, 894 (Bankr. W.D.Pa.1983).

The Trustee rejects the Bank's assertion that the majority of courts supports its position. Rather, he argues that the overwhelming majority of courts, including four courts of appeal, have determined that transfers to non-insiders may be subject to the one year "reach-back" period where the transfers have been made on account of antecedent debt that is guaranteed by insiders. The Trustee cites, among others, the following cases: *In the Matter of T.B. Westex Foods, Inc.,* 950 F.2d 1187 (5th Cir.1992); *In re H & S Transp. Co.,* 939 F.2d 355 (6th Cir.1991); *In re C–L Cartage Co.,* 899 F.2d 1490 (6th Cir.1990); *Levit v. Ingersoll Rand Fin. Corp. (In re V.N. Deprizio ),* 874 F.2d 1186 (7th Cir.1989); *In re Robinson Brothers Drilling, Inc.,* 97 B.R. 77 (Bankr.W.D.Okla.1988) *aff'd,* 892 F.2d 850 (10th Cir.1989); *In re Marilyn Steinberg Enter. Inc.,* 141 B.R. 587 (Bankr. E.D.Pa.1992); *In re Pine Springs Farm & Casino, Inc.,* 139 B.R. 90 (Bankr.N.D.N.Y. 1992); *In re Southwest Equip. Rental, Inc.,* 137 B.R. 263 (Bankr.E.D.Tenn.1992); *In re Dovetailed Enter.,* 136 B.R. 652 (Bankr.W.D.Va.1991); *In re Ishaq,* 129 B.R. 206 (Bankr.D.Or.1991); *In re AEG Acquisition,* 127 B.R. 34 (Bankr.C.D.Cal. 1991); *In re Helen Gallagher Enterprises, Inc.,* 126 B.R. 997 (Bankr.C.D.Ill.1991).

The most recent decision in this circuit addressing the issues before the Court is *In re Erin Food Services, Inc.,* 980 F.2d 792 (1992). In that case, the United States Court of Appeals for the First Circuit considered a challenge to a bankruptcy court order setting aside, as voidable preferences, three installment interest payments the debtor, Erin Food Services, Inc., ("Erin"), made to partially secured creditors, within one year of the Chapter 11 filing, on an antecedent debt guaranteed by an Erin insider—David W. Murray ("Murray").

The court found that the debtor borrowed $45 million, most of which was disbursed by the secured lenders directly to Erin's existing creditors and mortgage lenders. The court also found that, as part of the same refinancing, the debtor was provided with a $25 million revolving credit account for future franchise expansion, site acquisition and working capital. Totalling $70 million, both loans were secured by a so-called adjusted collateral pool, which included equipment and franchise agreements. The secured lenders obtained from

Murray a personal, non-recourse guaranty secured by liens on twenty-two parcels of real estate Murray owned in his own name.

Within the year preceding the Chapter 11 filing, Erin withdrew $3,249,990 from the revolving credit account, including $2,808,290 with which to make the three installment interest payments at issue. The court found that, as of the petition date, the real estate securing Murray's guaranty had an approximate value of $19.35 million, Erin's total indebtedness was $61.7 million, and the debtor was insolvent. The court ruled that the bankruptcy court correctly determined that Murray, as a personal guarantor, held a contingent unsecured claim against Erin equal to the value of the collateral he pledged to secure his non-recourse, personal guaranty and that "[t]here can be no question that an insider-guarantor derives measurable economic benefit from a payment on the guaranteed debt, *to the extent the insider's contingent liability on the personal guaranty is reduced. Id.* at 797 (emphasis in original). The Circuit Court also noted the bankruptcy court's reliance upon *Deprizio* and the plethora of cases either adopting or rejecting its holding and rationale. The court stated:

> We need not revisit the underlying issue addressed in *Deprizio.* First, the difficulties hampering each attempt (including *Deprizio*) to unravel the riddle of ill-expressed (or unexpressed) congressional intent are well recorded. Second, a definitive congressional resolution to the riddle may be in the offing. *See* S.1985, 102d Cong., 2d Sess. (1992); *see also* 138 Cong.Rec. S8241 ("[S]ection [204] seeks to overturn the *Deprizio* line of opinions...."). Finally, and more importantly, the particular circumstances before us afford a more conspicuous basis for decision. Therefore, for present purposes, we assume, without deciding, that *Deprizio* correctly interprets the legislative directives to be applied to the present claim.

*Id.,* at 798–799 (footnote omitted).

Turning to the merits of the case, the court determined that the trustee had failed to establish that Murray had received a quantifiable "benefit" from the challenged transfer for purposes of section 547(b) or that any "benefit" he received exceeded the amount he would receive in a hypothetical liquidation. The court stated:

> Since the non-insider creditor in a trilateral preference receives direct payment on its antecedent debt, the insider guarantor will realize a corresponding dollar-for-dollar reduction in the amount of his contingent liability on the guarantee, *see, e.g., Kapela v. Newman,* 649 F.2d [887] at 890 n. 3 [ (1st Cir.1981) ], except in cases like the present where the insider has guaranteed *less* than the full amount of the primary debt, or where the primary debt is fully secured by property of the debtor at the time of the challenged transaction.
>
> * * *
>
> Although the secured lenders realized the full "benefit" of the $2.8 million received in interest payments, there was no reduction whatever in Murray's liability on the non-recourse guaranty.... Since the personal guaranty was "without recourse" at the time the interest payments were made, Murray had no contingent liability to the secured lenders on Erin's $61.7 million debt, beyond the $19.35 million in collateral Murray pledged to secure the guaranty. Unless the net balance on Erin's $61,740,000 debt to the secured lenders fell *below* $19.35 million as a result of the challenged transfers, or the value of the ACP *exceeded* $42.39 million at the time of the transfers, no cognizable "benefit" could accrue to Murray. The former proposition cannot be established solely on the basis of a loan payment of $2.08 million, and the trustee did not assert or establish the latter proposition.

*Id.,* at 801–802.

With respect to the case at hand, the Trustee's argument is premised upon two valid assumptions recognized by the court in *Erin Food Services, Inc.:* (1) guarantors are creditors of the debtor because of their contingent right to payment, *see* 11 U.S.C. § 101(5) and (10); and (2) payments to the non-insider creditor are "for the benefit of"

insider/guarantors because the payments to the non-insider creditors reduced the exposure of the guarantors on their guaranties. Thus, the Trustee claims that he may avoid the transfers by the Debtor since they were made (1) to or for the benefit of creditors (the guarantors); (2) for or an account of an antecedent debt (their contingent right to payment); (3) while the debtor was insolvent; (4) within one year of the filing since the creditors/guarantors were insiders; and (5) the creditors/guarantors received more (the forgiveness of much of the amount guaranteed) than if the transfers had not been made.

The Bank focuses on the relationship between section 547(b) and 550(a)(1). It argues that permitting recovery pursuant to 11 U.S.C. § 550(a)(1) penalizes it for its prudence in obtaining guaranties and produces an inequitable result. But, the Trustee notes that these and other arguments made by the Bank have been rejected by the majority of courts that have considered them. According to the Trustee, the reasoning is simple: (1) the plain language of section 550(a)(1) permits the relief requested; and (2) it is not inequitable to require outside lenders to pursue inside guarantors because that is precisely the nature of the parties' bargain. As the Seventh Circuit stated:

> Rules of law affecting parties to voluntary arrangements do not operate "inequitably" in the business world—at least not once the rule is understood. Prices adjust. If the extended preference period facilitates the operation of bankruptcy as a collective debt-adjustment process, then credit will become available on slightly better terms. If a longer period has the opposite effect, creditors will charge slightly higher rates of interest and monitor debtors more closely.... At all events, in what sense is it "inequitable" to recapture payments to creditors that may have been favored only because payment reduced insiders' exposure (recall that the insiders select which debts to pay first), then distribute these monies according to statutory priorities and contractual entitlements? In what sense is it "inequitable" to require the outside lenders to pursue the inside guarantors for any shortfall, when they bargained for exactly that recourse."

*Deprizio*, 874 F.2d at 1198 (citations omitted).

The Court of Appeals for the First Circuit candidly explained its reasons for assuming without deciding that *Deprizio* correctly interprets the legislative history. However, this Court, in this case, lacks "a more conspicuous basis for decision." The facts in the instant case are straight forward, and lack the complications present in *Erin Food Services, Inc.* The exceptions noted by the circuit court (namely, cases where the insider has guaranteed less than the full amount of the debt or where the debt is fully secured by the debtor's property at the time of the transfers) are not present here. Clearly, the insiders in the instant case were benefitted in measurable ways by the paydown of the debtor's obligation to the Bank, A ruling one way or another cannot be avoided.

Despite the Bank's assertion that reliance upon the plain language of sections 547 and 550 is superficial, this Court is persuaded by recent decisions that such reliance is mandated by precepts of statutory construction and is the best approach. *See In re Marilyn Steinberg Enter. Inc., supra; In re Pine Spring Farm & Casino, Inc. supra.* These two cases address the theories and arguments promulgated by the courts rejecting *Deprizio*, and in this Court's view, persuasively rebut them. Accordingly, in the absence of profound criticism of *Deprizio* by the United States Court of Appeals for the First Circuit, and in view of the weight of appellate court support for the holding of *Deprizio*, this Court will follow the *Deprizio* decision and its progeny. Like the *Deprizio* court, this Court will rely on the plain language of the statute and await whatever action Congress deems appropriate to resolve the statutory riddle noted by the Court of Appeals for the First Circuit. Accordingly, the Court finds that the Trustee has stated a claim upon which relief can be granted. *See Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

For the reasons set forth above, the Court hereby denies the Bank's motion to dismiss. The Court also denies the Trustee's cross-motion for summary judgment. The foregoing shall constitute findings of fact and rulings of law in accordance with Fed.R. of Bankr.P. 7052. An appropriate order shall issue.