In re **MARILYN STEINBERG ENTERPRISES INC.** t/a **Maternity Mart and Warehouse, Debtor.**

Mitchell W. **MILLER**, Trustee, Plaintiff,

v.

Marilyn **STEINBERG**, Jerome Bercun, and Philadelphia National Bank, incorporated as CoreStates Bank, N.A., Defendants.

Bankruptcy No. 91–12726F.
Adv. No. 91–1055F.

United States Bankruptcy Court,
E.D. Pennsylvania.

June 17, 1992.

---

588

Alexander N. Rubin, Jr., Daniel B. Pierson, V, Leslie Beth Baskin, Rubin, Quinn, Moss, Heaney & Patterson, P.C., Philadelphia, Pa., for trustee Mitchell W. Miller.

David L. Braverman, Linda J. Fellen, Klehr, Harrison, Harvey, Branzburg & Ellers, Philadelphia, Pa., for CoreStates Bank, N.A.

George T. Bruckman, Neil H. Ackerman, Finkelstein, Bruckman, Wohl, Most &

Rothman, New York City., for defendant Jerome Bercun.

Marvin Krasny, David Doret, Wolf, Block, Schorr & Solis–Cohen, Philadelphia, Pa., for defendant Marilyn Steinberg.

## MEMORANDUM OPINION

### BRUCE I. FOX, Bankruptcy Judge:

Before me for resolution is defendant CoreStates' motion to dismiss counts 2 and 3 of the instant complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), incorporated in these proceedings by Bankruptcy Rule 7012, for failure of the plaintiff to state a claim upon which relief may be granted. This motion raises issues much discussed by other courts but not considered in this district since *In re Mercon Industries, Inc.*, 37 B.R. 549 (Bankr. E.D.Pa.1984). The facts underlying the dispute, for purposes of the motion to dismiss, may be summarized as follows.[1]

### I.

On or about June 23, 1989, the movant, defendant CoreStates Bank, restructured and continued a loan to the debtor, Marilyn Steinberg Enterprises, Inc. (hereinafter "debtor"). This transaction is evidenced by a Master Demand Promissory Note in the original amount of $2,500,000.00 (the "demand note"). On or about January 31, 1990, CoreStates restructured and continued another loan to the debtor, evidenced by a Commercial Promissory Note in the original principal amount of $1,500,000.00 (the "term note"). The demand note and term note, which are referred to by the parties as the "aggregate loan," were in turn reaffirmations of prior obligations due to CoreStates from the debtor.

The aggregate loan was guaranteed by the previously executed continuing guarantees, with confessions of judgment, dated November 6, 1986, of Marilyn Steinberg and Jerome Bercun.[2] Pursuant to these guarantees, Steinberg and Bercun apparently became, and remained, unconditional and unlimited sureties for all existing and future liabilities and obligations of the debtor to CoreStates.

The debtor defaulted on its obligations to CoreStates under the aggregate loan. The parties (including the sureties and B & S Rental Associates—a Pennsylvania general partnership with Bercun and Steinberg as general partners) then entered into a new pact, entitled the "restructure agreement," which agreement is dated December 14, 1990. Pursuant to the terms of the restructure agreement, the debtor agreed that the outstanding principal balances on the demand and term notes totalled $3,290,-000.00. In addition, Steinberg renewed her unlimited suretyship status for the debtor's obligations to CoreStates. Furthermore, Steinberg and Bercun pledged additional security for payment of the aggregate loan, and Bercun was released from his personal guarantee in exchange for the additional collateral and his payment of $100,-000.00 to CoreStates.[3]

The demand and term loan agreements prior to December 14, 1990 were unsecured loans insofar as the debtor's assets were concerned. The restructure agreement, however, required the debtor to execute a security agreement together with UCC–1 financing statements granting CoreStates a lien on and security interest in the debtor's inventory listed at specified locations. These documents were executed and then recorded by CoreStates on December 31, 1990.

Although not alleged in the trustee's complaint, at the hearing held on this motion to dismiss the parties agreed that in January, 1991, the debtor apparently sold all of its assets to a third party (one not a party to this dispute). With the transfer of

---

**1.** This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding as provided by 28 U.S.C. § 157(b)(2)(F).

**2.** For purposes of this motion to dismiss, it is accepted that Steinberg was the chairman of the debtor's board of directors as well as corporate secretary prior to the chapter 7 filing. Bercun

was the debtor's president and also a board director prior to the chapter 7 filing. Steinberg held 83% of the issued stock of the debtor while Bercun held the other 17%.

**3.** While Bercun was released from his unconditional and unlimited suretyship, the B & S partnership became a guarantor of these loans to the extent of its assets.

these assets, the debtor then owed only the promise of payment for those assets, and, at that point, the surety (Steinberg) became a co-obligor with the debtor to CoreStates.

The trustee alleges in this adversary proceeding that between May 18, 1990 and February 1, 1991 the debtor made numerous payments to CoreStates of principal and interest under the aggregate loan. On the demand note, the trustee alleges that these payments totalled not less than $745,570.56. On the term note, the trustee alleges that the payments during this period totalled not less than $329,718.91.

On May 15, 1991, an involuntary chapter 7 petition was filed against the debtor, and an order for relief was entered on June 17, 1991. Mitchell W. Miller, Esquire was appointed interim chapter 7 trustee on June 20, 1991. The trustee then initiated this adversary proceeding which seeks to avoid all transfers made to CoreStates on account of the aggregate loan during the one year period prior to the filing of the involuntary petition in bankruptcy. The parties before me agree that at the time the payments described above were made by the debtor to CoreStates, Steinberg and Bercun were "insiders" of the debtor pursuant to 11 U.S.C. § 101(31). The trustee believes that he is entitled to recover at least $1,075,289.41, which is the total amount he alleges was paid in the twelve month period prior to the bankruptcy petition filing by the debtor to CoreStates. (The trustee also believes that additional payments may have been made prior to bankruptcy, the precise details of which he is not yet aware.)

## II.

The trustee's complaint contains three counts. Count I is directed to defendants Steinberg and Bercun and demands a recovery of all payments made to CoreStates within one year of the debtor's bankruptcy filing pursuant to 11 U.S.C. §§ 547 and 550. Count II is directed to CoreStates only and asserts that the lien obtained by this defendant against the debtor's assets in December 1990 is an avoidable transfer pursuant to 11 U.S.C. § 547. Finally, count III is directed to CoreStates and seeks recovery of all payments made by the debtor within one year of its bankruptcy filing. As with count I, relief is based upon sections 547 and 550.

CoreStates has filed a motion to dismiss counts II and III. At bottom, it contends that it is not an insider of the debtor and so any transfer received by it more than ninety days prior to the debtor's bankruptcy petition is not avoidable.

In order to obtain dismissal under Federal Rule of Civil Procedure 12(b)(6), the movant must show that the plaintiff can prove no set of facts in support of his or her claim which would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957). I must accept as true all of the well-pleaded facts alleged in the complaint and any reasonable inferences therefrom. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Conley v. Gibson; Colburn v. Upper Darby Township,* 838 F.2d 663, 665 (3d Cir.1988); *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989); *Ajax/Acorn Manufacturing, Inc. v. Berman Sales Co.,* No. 91–5220, *slip op.,* 1991 WL 224997 (E.D.Pa. Oct. 29, 1991); *In re Marceca,* 129 B.R. 371 (Bankr. S.D.N.Y.1991); 2A *Moore's Federal Practice,* ¶ 12.07 [2.–5], at 12–63 (2d ed. 1991). That is, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. at 236, 94 S.Ct. at 1686.

This motion for dismissal asks that I decide whether a noninsider creditor may be forced to return as preferential the payments made to it by the debtor during the extended "reachback" period of 11 U.S.C. § 547(b)(4)(B), where the noninsider's claim was guaranteed by an insider of the debtor. Although this issue is one which has not yet been addressed by the Third Circuit Court of Appeals, it is understood that I need not resolve unsettled questions of law in favor of the plaintiff, in ruling on the propriety of defendant CoreStates' motion to dismiss for failure to state a claim. *Bane v. Ferguson,* 890 F.2d 11, 13 (7th

Cir.1989). That is, it is appropriate that this legal question be answered using the standards for dismissal under Fed.R.Civ.P. 12(b)(6) prior to trial on the merits. *Accord In re IRFM, Inc.,* 138 B.R. 595 (Bankr. C.D.Cal.1992); *In re Arundel Housing Components, Inc.,* 126 B.R. 216 (Bankr. D.Md.1991); *In re Mercon Industries, Inc.*

### III.

#### A.

I first note that in Count III of the complaint the plaintiff seeks a recovery from CoreStates of "preferential transfers pursuant to 11 U.S.C. § 547 and § 550(a)(1)...." Complaint, at ¶ 33. The trustee asserts that the debtor was insolvent at all relevant times. And, at paragraphs 18 and 19 of the complaint the trustee lists payment dates and amounts on payments alleged to have been made on the demand note and the term note. All of the dates listed are between 90 days and one year prior to the date of the filing of involuntary petition of bankruptcy.[4] Paragraph 20 of the complaint alleges, however, that the debtor may have made payments in addition to those referred to in paragraphs 18 and 19 between May 15, 1990 and May 15, 1991, the twelve month period preceding bankruptcy. Thus, the trustee implicitly alleges that payments within the shorter 90 day preferential period may have also been made, and seeks recovery of those payments.

**4.** The parties assume, and for purposes of this motion I agree, that the preference period is counted back from the date the involuntary petition was filed in this chapter 7 bankruptcy, and not from the date relief was ordered. *See, e.g., In re Cavalier Homes of Georgia, Inc.,* 102 B.R. 878, 883 n. 6 (Bankr.M.D.Ga.1989); *In re Baker & Getty Financial Services, Inc.,* 98 B.R. 300, 307 (Bankr.N.D.Ohio 1989). *See also* 11 U.S.C. § 303(b)(2).

**5.** The trustee seeks recovery from CoreStates of the security interest which was transferred to it on or about December 31, 1991. *See* Complaint, ¶ 31. Of course, the grant of a security interest in property of the debtor may constitute a transfer which is voidable under § 547(b). *See In re Gurs,* 34 B.R. 755 (9th Cir. BAP 1983); *In re Dovetailed Enterprises, Inc.,* 136 B.R. 652 (Bankr.W.D.Va.1991); *In re Aspen Data Graph-*

Pursuant to 11 U.S.C. § 547(b)(4)(A), payments made during the ninety day period before bankruptcy may be recovered without regard to whether the payments were made to or for the benefit of an insider. Accepting as I must that the complaint's allegations are true (for purposes of this motion only), all the elements of a preferential recovery action under section 547(b) are properly pleaded with regard to payments made to a creditor within 90 days prior to the petition. The motion to dismiss must be denied, then, at least in part, so that the trustee may offer evidence to support his claims regarding those payments made within 90 days of the involuntary petition. *See Scheuer v. Rhodes,* 416 U.S. at 236, 94 S.Ct. at 1686.

#### B.

What remains, and what is the crux of this dispute, is the question of whether the trustee has stated a cause of action against CoreStates as to its receipt of a security interest[5] and payments during the so-called "insider" preference period. The statutes implicated by this action are 11 U.S.C. §§ 547(b) and 550(a), which govern avoidance and recovery issues concerning preferential transfers. Section 547 identifies those transfers which may be avoided, while section 550 governs recoverability of transfers so avoided. 11 U.S.C. § 547(b) provides as follows:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any

*ics, Inc.,* 109 B.R. 677 (Bankr.E.D.Pa.1990); *In re Aerco Metals, Inc.,* 60 B.R. 77 (Bankr.N.D.Texas 1985).

The complaint at Count II demands that the transferred security interest be avoided, pursuant to 11 U.S.C. § 547. The parties indicated at the hearing on this motion and in their submissions that the assets underneath this security interest have been sold to a third party. The trustee has not abandoned this claim (although his initial memorandum at 16, n. 6 suggests the sale of the debtor's assets may have rendered this issue moot) and given the evidence before me and the standard for deciding a motion to dismiss I need discuss the allegations of Count II of the complaint only in terms of whether the action against CoreStates during the extended reachback period states a claim upon which relief may be granted.

transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provision of this title.

11 U.S.C. § 550(a) provides in pertinent part that:

[e]xcept as otherwise provided in this section, to the extent that a transfer is avoided under section ... 547 ..., the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

■ To decide whether these Bankruptcy Code provisions enable the trustee to state a claim for relief, I must first determine the proper method of statutory construction. Recent Supreme Court and Third Circuit Court of Appeals decisions have provided instruction in this area.

Most recently, the Supreme Court affirmed a decision by the Third Circuit Court of Appeals in a bankruptcy matter, *Taylor v. Freeland & Kronz*, — U.S. ——, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). At issue in *Taylor* was whether 11 U.S.C. § 522(1) and Fed.R.Bankr.P. 4003(b) required objections to claimed exemptions be made within 30 days after the conclusion of the meeting of creditors. The Third Circuit had determined that the Code and Rules provided a "seemingly clear statutory scheme," *Taylor v. Freeland & Kronz*, 938 F.2d 420, 423 (3d Cir.1991), and that "the text of section 522(1) and Rule 4003(b) could not be much clearer...." *Id.*, at 424. Thus, the Third Circuit found that this fact "all but resolves this case, for the general rule of statutory interpretation is that where 'the terms of a statute [are] unambiguous, judicial inquiry is complete except in rare and exceptional circumstances.'" *Id., quoting Demarest v. Manspeaker*, — U.S. ——, 111 S.Ct. 599, 604, 112 L.Ed.2d 608 (1991). *See also Barnes v. Cohen*, 749 F.2d 1009, 1013 (3d Cir.1984), *cert. denied*, 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985):

In interpreting a statute, the starting point is of course the language of the statute itself.... It is to be presumed that "the legislative purpose is expressed by the ordinary meaning of the words used," ... and if the statutory language is clear, it is not necessary to examine the legislative history....

*(quoting Richards v. United States*, 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962)) (citations omitted).

The Supreme Court approved the approach taken by the Third Circuit Court of Appeals in *Taylor*. It regarded the meaning of the statute and rule as "plain" and unambiguous, and used the clear language of the statute and accompanying procedural rule to decide the question. *See Taylor*, 112 S.Ct. at 1652 (Stevens, J., dissenting).

The same approach to determining congressional intent regarding a particular Bankruptcy Code provision was utilized in *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), in which the Court stated:

The task of resolving the dispute over the meaning of [11 U.S.C.] § 506(b) begins where all such inquiries must begin:

with the language of the statute itself. *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685 [105 S.Ct. 2297, 2301, 85 L.Ed.2d 692] (1985). In this case it is also where the inquiry should end, for where, as here, the statute's language is plain, "the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States,* 242 U.S. 470, 485 [37 S.Ct. 192, 194, 61 L.Ed. 442] (1917).

*Id.,* at 241, 109 S.Ct. at 1030. Accordingly, the Court found that the "language before us expresses Congress' intent ... with sufficient precision so that reference to legislative history and to pre-Code practice is hardly necessary." *Id. Accord Connecticut National Bank v. Germain,* — U.S. ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) ("courts must presume that a legislature says in a statute what it means and means in a statute what it says there.... When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" (citations omitted)); *Union Bank v. Wolas,* — U.S. ——, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991) (no inquiry into Congressional intent when the statute is clear on its face).

Accordingly, whether the trustee has set forth a cause of action under sections 547(b) and 550(a)(1) (for which he has the burden of persuasion, 11 U.S.C. § 547(g)) depends initially upon the language of these statutory provisions. If these provisions are clear, the legal issue posed by this motion is resolved.

### C.

Before turning to the express language of the statute, it is worth summarizing the trustee's theory of recovery, a theory which has been well discussed of late. Where a debtor's obligation under a loan from a noninsider creditor is guaranteed by an insider of the debtor, transfers to the noninsider creditor have the effect of bene-

fitting the insider-guarantor by reducing her contingent liability. As stated in *Levit v. Ingersoll Rand Financial Corp. (In re Deprizio),* 874 F.2d 1186, 1188 (7th Cir. 1989) (hereinafter referred to as *"Deprizio"*), "payments made to these outside creditors were 'for the benefit' of inside cosigners and guarantors, because every dollar paid to the outside creditor reduced the insider's exposure by the same amount." Under the Code's broad definition of "creditor," [6] the guarantor is a creditor of the debtor because he or she has a contingent right to payment. *See, e.g., In re C–L Cartage Co., Inc.,* 899 F.2d 1490 (6th Cir. 1990); *Deprizio; In re Pine Springs Farm & Casino, Inc.,* 139 B.R. 90 (Bankr. N.D.N.Y.1992); 4 *Collier on Bankruptcy,* ¶ 547.04[1] at 547–33 (15th ed. 1992). *See also Schweitzer v. Consolidated Rail Corp.,* 758 F.2d 936, 942 (3d Cir.), *cert. denied,* 474 U.S. 864, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985) ("a person may hold a 'contingent' claim and thereby be a 'creditor' within the meaning of the Bankruptcy Act"); *Kapela v. Newman,* 649 F.2d 887 (1st Cir.1981) (same).

Here, as Steinberg and Bercun were guarantors for the debtor on the loans in question, they held contingent claims against, and were creditors of, the debtor. Thus, the trustee asserts *and CoreStates agrees* that payments made to CoreStates within one year of the bankruptcy filing, and which served to reduce the extent of these insiders' guarantee of the debtor's obligation, constitute a preferential transfer under section 547(b). Insofar as these transfers are concerned, the trustee has clearly alleged all of the elements of a preference under section 547(b).

The parties here part company when it comes to the trustee's requested relief under section 550(a). The trustee argues that since the debtor's payments to CoreStates had the effect of benefitting the insider-guarantors, the longer reachback period

---

**6.** 11 U.S.C. § 101(5)(A) defines "claim" to mean a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, *contingent,* matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." (Emphasis added.) "Creditor" is defined at § 101(10)(A) to include an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor. CoreStates does not dispute that these insiders were creditors of the debtor.

for avoidance, coupled with the recovery powers of § 550(a), permits the plaintiff to recover those payments from the transferee—CoreStates. *Accord, e.g., In re C–L Cartage Co., Inc.; In re Robinson Bros. Drilling, Inc.,* 97 B.R. 77 (W.D.Okla.1988), *aff'd per curiam,* 892 F.2d 850 (10th Cir. 1989); *Deprizio; In re Southwest Equipment Rental, Inc.,* 137 B.R. 263 (Bankr. E.D.Tenn.1992); *In re Pine Springs Farm & Casino, Inc.; In re IRFM, Inc.; In re Dovetailed Enterprises, Inc.,* 136 B.R. 652 (Bankr.W.D.Va.1991); *In re Ishaq,* 129 B.R. 206 (Bankr.D.Or.1991); *In re Helen Gallagher Enterprises, Inc.,* 126 B.R. 997 (Bankr.C.D.Ill.1991).

CoreStates contends, however, that sections 547(b) and 550(a) when read together limit the trustee's recovery of the preferential transfers to the insider defendants. In support of its position, it cites to a number of court decisions. *See, e.g., Matter of Midwestern Companies, Inc.,* 102 B.R. 169 (W.D.Mo.1989); *In re Performance Communications, Inc.,* 126 B.R. 473 (Bankr.W.D.Pa.1991); *In re Mercon Industries, Inc.; Matter of R.A. Beck Builder, Inc.,* 34 B.R. 888 (Bankr.W.D.Pa.1983); *In re Cove Patio Corp.,* 19 B.R. 843 (Bankr. S.D.Fla.1982). Furthermore, it notes that permitting a bankruptcy trustee to recover payments made to a lender solely because of the existence of a guarantee from an insider wrongfully penalizes only the prudent lenders who obtain such guarantees. In CoreStates' view, Congress could not have intended such a result.

My difficulty with defendant's position is that, at bottom, it ignores the plain language of section 550(a)(1) and therefore concludes that Congress did not mean what it said. Moreover, the policy arguments made are not as overwhelming as CoreStates would suggest. One can articulate competing policy concerns which support recoveries from noninsider creditors.

I turn first to the statute.

## IV.

The analysis favoring the trustee's position from a textual standpoint is relatively straightforward.

There is no dispute in this motion to dismiss that the provisions of section 547(b)(2), (b)(3) and (b)(5) have been properly alleged. Thus, three of the five elements of a preferential transfer are unchallenged. Subsection 547(b)(1) requires that there be a transfer "to or for the benefit of a creditor." The transfers in question were made to CoreStates, who was a creditor of this debtor. But the language of subsection 547(b)(1) is explicit that a transfer falls within the ambit of section 547(b) even if made to a noncreditor, so long as a creditor benefits from the transfer. In this proceeding, the transfers also benefitted the debtor's insiders who, as discussed above, are also creditors of the debtor. Accordingly, the provisions of section 547(b)(1) have been established for purposes of this motion.

The last preference element that need be established is found in subsection 547(b)(4), which concerns the timing of the transfer. The transfer must be within 90 days of the bankruptcy filing unless "such creditor" was an insider of the debtor; in the latter instance, the reachback period is one year. It is worth noting that the creditor referred to in subsection 547(b)(4)(B) is the same "creditor" mentioned in subsection 547(b)(1).

Accordingly, transfers "to or for the benefit of a creditor" pursuant to subsection 547(b)(1) are avoidable if made when "such creditor," subsection 547(b)(4)(B), was an insider during that reachback period. Thus, a payment to a third party, which payment has the effect of benefitting an insider-creditor, is one made "for the benefit" of the insider, and hence preferential if made during the extended reachback period. *E.g. In re C–L Cartage Co., Inc.,* 899 F.2d at 1493; *In re Robinson Bros. Drilling, Inc.; Deprizio.*

■ Courts have considered this result to follow the "plain and unambiguous" language of § 547(b). *E.g. In re C–L Cartage Co., Inc.,* 899 F.2d at 1494. I agree that subsection 547(b) imparts this plain meaning and produces the result just described. That is, transfers made for the benefit of

an insider who holds a contingent claim against the debtor, made while a debtor was insolvent, made on behalf of an antecedent debt, and which enabled the insider to receive more than she would have if the debtor's assets were liquidated in chapter 7 are preferential if made within one year of the bankruptcy filing. Indeed, as mentioned above, CoreStates has no quarrel with this analysis.

◼ Once it is determined that an avoidable preference exists pursuant to section 547, one must turn to section 550 to determine from whom or from what entity the trustee may seek recovery. 11 U.S.C. § 550(a) defines the entities from which the trustee may recover those transfers avoided pursuant to, *inter alia*, § 547. Section 550(a)(1) expressly states that the trustee may recover such transferred property (or its value) from either "the initial transferee of such transfer or the entity for whose benefit such transfer was made."[7] *Matter of T.B. Westex Foods, Inc.*, 950 F.2d 1187 (5th Cir.1992); *In re C–L Cartage Co.*, 899 F.2d at 1494; *In re Robinson Bros. Drilling, Inc.*, 97 B.R. at 80; *In re David Jones Builder, Inc.*, 129 B.R. 682, 693 (Bankr. S.D.Fla.1991); *In re Big Three Transp., Inc.*, 41 B.R. 16, 20–21 (Bankr.W.D.Ark. 1983). Thus, in this instance, section 550(a)(1) expressly permits the trustee to seek recovery of the preferential transfers from either CoreStates—the initial transferee—or from Steinberg and Bercun, the insider-creditor entities "for whose benefit such transfer was made." 11 U.S.C. § 550(a)(1).

**V.**

◼ Despite this straightforward construction of sections 547 and 550, some courts have reached a different conclusion concerning the extended preference liability of creditors holding insider guarantees by focusing on the benefits bestowed by virtue of the transfer. They note that the noninsider's benefit (here, a transfer in satisfaction of the primary indebtedness) and the insider-guarantor's benefit (reduction of a contingent claim) are distinct. That is, a single transfer of funds is said to effect two transfers under the Code, due to the secondary liability of the guarantor. *E.g. In re Mercon Industries, Inc.*, 37 B.R. at 552. The transfer to the noninsider, it is reasoned, is not avoidable if it was made in excess of 90 days prior to the filing. The transfer to the insider (the "indirect transfer"), however, arising from the same action by the debtor, would be avoidable during the extended reachback period. *Accord, e.g., In re Performance Communications, Inc.*

While this two transfer analysis has been used by a number of courts, *e.g. In re Aerco Metals, Inc.*, 60 B.R. 77 (Bankr.N.D.Texas 1985); *In re Mercon Industries, Inc.; In re Cove Patio Corp.; In re Church Buildings and Interiors, Inc.*, 14 B.R. 128 (Bankr.W.D.Okla.1981) (including the Fifth Circuit Court of Appeals in another context, *Matter of Compton Corp.*, 831 F.2d 586, 591 (5th Cir.1987), *modified on rehearing on other grounds*, 835 F.2d 584 (1988)[8]), the Seventh Circuit Court of Appeals criticized this so-called "two-transfer" theory, or "direct/indirect transfer doctrine," because the approach

---

**7.** The trustee is limited by § 550(c) to a single satisfaction under subsection (a).

**8.** Both parties, but particularly CoreStates, refer to two Fifth Circuit decisions for support. *Matter of T.B. Westex Foods, Inc.*, 950 F.2d 1187 (5th Cir.1992); *Matter of Compton Corp.*, 831 F.2d 586 (5th Cir.1987), *modified on reh'g on other grounds*, 835 F.2d 584 (1988). The first decision held that a noncreditor of the debtor who holds a claim against the debtor's insider must return as preferential a garnishment transfer of the debtor's assets made during the one year reachback period. The latter decision held that the beneficiary of a letter of credit received a pref-

erential transfer that could be recovered by the trustee when the letter of credit arose after the creation of the debt and was paid during the 90 day reachback period for noninsiders.

Neither decision addresses the issue presently before me, although the *Westex* decision contains language both parties view as helpful. Therefore, I conclude that the Fifth Circuit has not yet spoken on this question. *Westex*, 950 F.2d at 1195 ("Alaska has not demonstrated any sufficiently compelling equity to warrant deviation from the statutory scheme, even assuming, *arguendo* only, that in other contexts (*e.g.*, the insider guarantor) such might be appropriate").

equates "transfer" with "benefit received." *Deprizio*, 874 F.2d at 1195. The Court of Appeals explained that the Code's preference scheme discusses transfers only vis-a-vis the debtor, and not the recipient:

> Sections 547 and 550 both speak of a transfer being avoided; avoidability is an attribute of the transfer rather than of the creditor. While the lenders want to define transfer from the recipients' perspectives, the Code consistently defines it from the debtor's. A single payment therefore is one "transfer", no matter how many persons gain thereby.

*Id.,* at 1195–96 (footnote omitted). *Accord, e.g., In re C–L Cartage Co., Inc.,* 899 F.2d at 1494–95.

On balance, I concur that the "two-transfer" approach is a result oriented methodology that distorts the clear language of section 550(a)(1) and thus runs contrary to congressional intent. *See, e.g., In re Robinson Bros. Drilling, Inc.,* 97 B.R. at 82; *In re Pine Springs Farm & Casino, Inc.,* 139 B.R. at 95.[9] In essence, this approach limits recovery of the preferential transfer to the "creditor" referred to in subsection 547(b)(1).[10] Congress could have so limited section 550(a) by restricting recovery of the avoidable transfer from "such creditor", but it chose not to do so. Instead, subsection 550(a)(1) permits recovery from "transferees", who may not even be "creditors" of the debtor. *See, e.g., Matter of T.B. Westex Foods, Inc.; In re Mill Street, Inc.,* 96 B.R. 268 (9th Cir. BAP 1989); *In re Universal Clearinghouse House Co.,* 62 B.R. 118 (D.Utah 1986). *See also In re Bagwell,* 29 B.R. 461, 466 (Bankr.D.Or. 1983) (bank which held assignment of claim from debtor's creditors was liable to the trustee for direct receipt of preferential payments to the extent the payments fell outside the protection of subsection 547(c)).

Stated differently, the "two-transfer" approach fails to acknowledge that by virtue of § 547(b)(1) a transfer may be avoided when made not just "to" a creditor, but also when made "for the benefit of" a creditor. In the latter instance someone other than the "creditor" has received the transfer. Section 550(a)(1) allows for that possibility by permitting recovery from the entity who actually received the property or from the creditor who received the benefit thereby. *See In re Mill Street, Inc.; In re Checkmate Stereo & Electronics, Ltd.,* 21 B.R. 402, 411 (E.D.N.Y.1982); *In re Jameson's Foods, Inc.,* 35 B.R. 433, 440 (Bankr.D.S.C.1983). There is no suggestion that section 550(a)(1) does not permit this alternative recovery when the transfer occurs within 90 days of the bankruptcy filing under section 547(b)(4)(A). *See In re Mill Street, Inc. See also Matter of Compton Corp.* Section 550(a)(1) cannot be construed differently simply because subsection 547(b)(4)(B) rather than subsection 547(b)(4)(A) is relevant. *See United*

---

**9.** The Fifth Circuit Court of Appeals, in *Matter of T.B. Westex Foods, Inc.,* declined to consider the merits of the "two-transfer" analysis discussed above, as it held the theory inapplicable to the facts of that case, where it found the debtor's payment to the noninsider represented only one obligation that was discharged by the transfer. That case, involving satisfaction of a garnishment, was thus distinguished from the insider-guarantor situation where there are "two distinguishable obligations that are concurrently discharged." *Id.,* 950 F.2d at 1194.

**10.** In fact, CoreStates implicitly notes this difficulty by submitting a supplemental memorandum attempting to distinguish this dispute from that posed in *Westex.*

At bottom, *Westex* involved a corporate debtor with a debt to an insider who pays a portion of the insider's debt to a third party within the one year reachback period. The Fifth Circuit concluded that such a payment was preferential.

Obviously, if the debtor had paid the insider his claim instead of paying the third party, and then the insider used the funds to pay his own creditor, the trustee could recover the preference from either the insider or the insider's transferee. 11 U.S.C. § 550(a)(1). The Fifth Circuit concluded, and CoreStates agrees, that this result should hold when the debtor pays the insider's creditor directly. *Matter of T.B. Westex Foods, Inc.*

But why should this creditor of an insider, who is a noncreditor of the debtor, be obligated to return funds received when the transfer is not preferential as to it? (This entity has not received payment on an antecedent debt. 11 U.S.C. § 547(b)(2)). Nor is the conveyance "fraudulent" as the debtor has received cancellation of the insider's claim as consideration for payment. The answer lies in the policy choices Congress made when it drafted section 550(a)(1).

*States v. Nordic Village, Inc.*, — U.S. —, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (courts must construe the entirety of a section so that every word has some operative effect).[11]

The import of sections 550(a)(1) and 547(b) is clear, and their terms are simply applied. As a "plain meaning" is conveyed by the text, there is no need to delve further. In fact, it would be inappropriate to do so. *Taylor v. Freeland & Kronz; Demarest v. Manspeaker.* Where, as here, the statute's language is plain, the sole function of this court is to enforce it according to its terms. *United States v. Ron Pair Enterprises, Inc.*[12]

### VI.

■ To avoid this result, CoreStates also raises two arguments suggesting that the language of sections 550(a)(1) and 547(b) are not necessarily clear. First it notes that if § 550(a)(1) permits recovery from the noninsider-creditors, § 547(d) would be superfluous.[13] This argument posits that the specialized avoiding power of § 547(d) would be unnecessary if § 550(a)(1) already permitted the trustee to recover from the surety as the "initial transferee" of the avoided preferential transfer. Katzen, *Deprizio and Bankruptcy Code Section 550: Extended Preference Exposure via Insider Guarantees*, 45 The Business Lawyer 511, 525 (February 1990).

In my view section 547(d) does not render the meaning of section 550(a)(1) ambiguous. The fact that there may be some statutory redundancy is not sufficient to undermine the plain and coherent statutory text. *Connecticut National Bank v. Germain.* Section 550(a)(1) permits the recovery of a preferential transfer from an entity to whom the transfer was not preferential.

■ Second, a number of courts have suggested that if section 550(a)(1) permits the recovery of a preference from a noninsider during the one year reachback period, then the defenses of section 547(c) would be unavailing. Accordingly, these courts reason that section 550(a)(1) cannot be construed that broadly for it would undermine subsection 547(c). *E.g. In re Performance Communications, Inc.*

I find this argument unpersuasive as there is no statutory basis to deny the defenses of section 547(c) to any defendant in a preference litigation. Indeed, portions of section 547(c) expressly refer to transferees. *See, e.g., In re Southwest Equipment Rental, Inc.; In re Ishaq.* And section 547(g), which assigns the respective burdens of persuasion in preference litigation, states that "a creditor or party in interest against whom recovery of avoid-

11. I find unpersuasive decisions such as *Matter of Midwestern Companies, Inc.*, 102 B.R. 169, 173 (W.D.Mo.1989) which holds that permitting recovery from the noninsider would "obliterate" the distinction drawn by subsection 547(b)(4) between insider-creditors and noninsider creditors. The distinction regarding the reachback period would still exist except in those instances when the noninsider receives a transfer which results in a benefit to the insider.

12. I am aware that House Report No. 95–595, 95th Cong., 1st Sess. 372 (1977), U.S.Code Cong. & Admin.News pp. 5787, 6328 contains the sectional analysis of § 547(b) as reported by the House Judiciary Committee. The Report notes that subsection (b) is the operative provision of § 547, and it lists the five elements of a preference action. In relevant part, the House Report states that "[i]f the transfer was to an insider, the trustee may avoid the transfer if it was during the period that begins one year before the filing of the petition and ends 90 days before the filing...." This legislative history does not indicate that members of Congress expressly considered the present factual situation when preparing this bill. Furthermore, I find I need not attempt to divine the meaning of the legislative history, as the statutory text is clear on its face. *Union Bank v. Wolas.* The fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning. *Toibb v. Radloff*, — U.S. —, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991).

13. Section 547(d) states in full as follows:
    (d) The trustee may avoid a transfer of an interest in property of the debtor transferred to or for the benefit of a surety to secure reimbursement of such a surety that furnished a bond or other obligation to dissolve a judicial lien that would have been avoidable by the trustee under subsection (b) of this section. The liability of such surety under such bond or obligation shall be discharged to the extent of the value of such property recovered by the trustee or the amount paid to the trustee.

ance is sought" has the burden of proof with respect to defense under subsection 547(c). Therefore, one does not eliminate section 547(c) by interpreting section 550(a)(1) as plainly written.[14]

## VII.

Finally, I turn to the equitable arguments asserted by the defendant.

■ The notion of an avoidable preference is a longstanding congressional policy that creditors should not be permitted, either intentionally or unintentionally, to recover more from the debtor than other creditors with similar claims, by virtue of transfers made in their favor just prior to the debtor's bankruptcy filing. At the time the preferential transfer is made, there may be nothing improper about it under state law. *See In re Nelson*, 959 F.2d 1260, 1266 (3d Cir.1992). However, once the bankruptcy petition is filed, a trustee may avoid or set aside the preferential transfer pursuant to 11 U.S.C. § 547.

Congress envisioned two overriding policies which would be enhanced by the trustee's ability to avoid preferential transfers. First, similar creditors would be treated equally in their receipt of distributions from the debtor's assets. Second, creditors would be discouraged from racing against each other to dismember the debtor, since an earlier recovery could later be set aside as preferential. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. at 177–78 (1977) U.S.Code Cong. & Admin.News pp. 5787, 6138. *See Deprizio*, 874 F.2d at 1194. *Accord* 4 *Collier on Bankruptcy*, ¶ 547.01 at 547–11 and n. 18 (15th ed. 1992).

Congress believed that incorporating these policies into bankruptcy law would achieve a number of beneficial results. Among them: creditors would not have an incentive to act against financially distressed companies which could force companies into bankruptcy; and insiders could not insure that their claims were paid before other creditors, based upon their superior knowledge of the debtor's financial condition. *See, e.g., In re C–L Cartage Co., Inc.*, 899 F.2d at 1495.

The scope of a preferential transfer as it is defined by section 547 embodies many policy choices. Jackson, *Avoiding Powers in Bankruptcy*, 36 Stanford L.Rev. 725 (1984). These are initially articulated by the provisions of section 547(b), which contains the essential elements of a preference as Congress chose to define it. Congress then recognized additional policy considerations by virtue of section 547(c). Certain transfers which might at first appear preferential, because they meet all of the requirements of section 547(b), should not be so viewed for various reasons.[15]

It appears that the "two-transfer" theory is employed as a rationale to reach an "equitable" result, one which satisfies a particular policy concern. A leading commentary on bankruptcy is often cited for the proposition that it would be inequitable to force the noninsider to disgorge payments made to it during the longer reach-back period:

> In some circumstances, a literal application of section 550(a) would permit the trustee to recover from a party who is innocent of wrongdoing and deserves protection. In such circumstances the bankruptcy court should use its equitable powers to prevent an inequitable result. For example, ... if a transfer is made to a creditor who is not an insider more than 90 days but within one year before bankruptcy and the effect is to prefer an insider-guarantor, recovery should be restricted to the guarantor and the creditor should be protected. Otherwise, a credi-

---

14. CoreStates expressly agrees that transferees have the right to assert the provisions of section 547(c). Memorandum at 14, n. 7. In fact, CoreStates intends to assert a defense under section 547(c)(2) if its motion to dismiss is denied. *Id.*

15. None of these policy choices are immutable; Congress has amended the bankruptcy prefer-ence provisions with some frequency in the past. Indeed, it is considering amending them again to protect noninsider-creditors with insider guarantees. *See* S.1985, 102d Cong., 1st Sess. (1991) (purporting to reverse *Deprizio*, but perhaps only with respect to payments for goods or services sold and delivered to the debtor in the ordinary course of business).

tor who does not demand a guarantor can be better off than one who does. 4 *Collier on Bankruptcy*, ¶ 550.02 at 550–8 (15th ed. 1992) (footnotes omitted). *See also Matter of T.B. Westex Foods, Inc.*, 950 F.2d at 1194 (phrasing the issue thusly: it was the creditor's "prudent requirement of a guarantee that creates the connection to the insider that triggers application of the extended insider preference period"). Based upon this reasoning, numerous courts have held that even though a payment to a noninsider was a preferential transfer to the insider-guarantor, the court should use its discretion and not require the noninsider transferee to surrender its payments received. *See, e.g., In re Arundel Housing Components, Inc.*, 126 B.R. at 219; *In re Performance Communications, Inc.*, 126 B.R. at 477; *In re Aerco Metals, Inc.*, 60 B.R. 77 (Bankr.N.D.Tex. 1985); *In re Duccilli Formal Wear, Inc.*, 8 B.C.D. 1180, 1183 (S.D.Ohio 1982).

The Third Circuit has long held, however, that the provisions of 11 U.S.C. § 105(a) cannot be used to override specific Code provisions—such as § 547(b). *See, e.g., In re Morristown & Erie R. Co.*, 885 F.2d 98, 100 (3d Cir.1989); *Southern Ry. Co. v. Johnson Bronze Co.*, 758 F.2d 137, 141 (3d Cir.1985). *Accord, e.g., Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206–207, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988) ("whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code"). *See also, e.g., In re Frieouf*, 938 F.2d 1099, 1102 at n. 4 (10th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1161, 117 L.Ed.2d 408 (1992); *In re Middleton Arms, Ltd. Partnership*, 934 F.2d 723, 724 (6th Cir.1991). As the statutory scheme appears clear and unambiguous, its specific terms should not be undone by any application of the equitable powers of this court. *Accord, In re C–L Cartage Co.*, 899 F.2d at 1494; *Deprizio*, 874 F.2d at 1197–98.

■ Moreover, even if equitable concerns could empower a bankruptcy court to overlook the specific language of section 550(a)(1), an argument could be made that the result reached by recovering the preference from the noninsider transferee is consistent with the general policy choices made by Congress in enacting sections 547 and 550. As expressed by the Seventh Circuit:

> Rules of law affecting parties to voluntary arrangements do not operate "inequitably" in the business world—at least not once the rule is understood. Prices adjust. If the extended preference period facilitates the operation of bankruptcy as a collective debt-adjustment process, then credit will become available on slightly better terms. If a longer period has the opposite effect, creditors will charge slightly higher rates of interest and monitor debtors more closely.... At all events, in what sense is it "inequitable" to recapture payments to creditors that may have been favored only because payment reduced insiders' exposure (recall that the insiders select which debts to pay first), then distribute these monies according to statutory priorities and contractual entitlements? In what sense is it "inequitable" to require the outside lenders to pursue the inside guarantors for any shortfall, when they bargained for exactly that recourse?

*Deprizio*, 874 F.2d at 1198 (citations omitted). *Accord In re Robinson Bros. Drilling, Inc.*, 97 B.R. at 81 (*citing Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890, 894–95 (7th Cir.1988)).

More recently, the Bankruptcy Court for the Central District of California rephrased this position:

> Forcing creditors to pursue their bargained for alternative remedies does not prejudice the outside creditor if the guarantee from the insider was adequately collateralized. Failure of a creditor to adequately collateralize a guarantee suggests that the real purpose of the guarantee may be to exert additional control over the insider guarantor. In such a situation, a creditor's " 'prudence' in obtaining the guarantee will often be a thinly cloaked pursuit of a preference, and giving absolute protection to ... [the

creditor] merely encourages self-interested conduct by [the] insider."

*In re IRFM, Inc.*, 138 B.R. 595, 602 (Bankr. C.D.Cal.1992) (*quoting* Nussbaum, *Insider Preferences and the Problem of Self-Dealing Under the Bankruptcy Code,* 57 U.Chi.L.Rev. 603, 614 (1990)).

The Third Circuit's admonition against using equitable powers to overcome specific Code provisions and the plain language approach to statutory interpretation are strongly related concepts. Together they instruct that it is not the function of this court to usurp the legislative powers of Congress and enact policy. Thus, I need not decide which of the above quoted policy positions I find more persuasive. Instead, I am restricted to interpret bankruptcy law provisions so as to implement legislative intent, which is generally expressed in the language of the statute itself. *American Tobacco Co. v. Patterson,* 456 U.S. 63, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982).

If a clear meaning may be understood from the statute, courts should inquire no further. *E.g. Union Bank v. Wolas,* 112 S.Ct. at 531. When members of Congress pass upon legislation their goals and purposes in doing so may vary. The statute actually written and enacted represents the embodiment of that collective intent. This being so, courts need not and generally should not seek other sources of intent unless the statute itself is unclear, *Taylor v. Freeland & Kronz,* or would lead to an absurd result. *See SEC v. Ambassador Church Finance Development Group, Inc.,* 679 F.2d 608, 611 (6th Cir.1982). Here, the plain meaning of the statutory language, applied in a straightforward way, does not yield an absurd result in that the preferential recovery permitted is consistent with the general policies underlying these sections.

### VIII.

As noted above, some members of Congress have signalled their desire to amend § 547(c) in order to alter the result now reached. But at present, noninsider-creditors with guarantees are vulnerable to the extended reachback period. Accordingly, I find that the trustee has alleged all the elements of a preferential transfer action against defendant CoreStates, and has stated a claim against that defendant upon which relief may be granted. CoreStates' motion to dismiss counts II and III of the adversary proceeding shall be denied.

An appropriate order shall be entered.